UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
                                     :

In re: BERNARD L. MADOFF INVESTMENT  :
SECURITIES LLC,                      :

                                 :       20-CV-1029 (JMF)

                  Debtor.         :

                                 :        ORDER

--------------------------------------------------------------- :

                                 :

IRVING H. PICARD, *Trustee for the Liquidation of*  :
*Bernard L. Madoff Investment Securities LLC, and*  :
*Bernard L. Madoff*,                 :

                                 :

                  Plaintiff,    :

                                 :

         -v-                    :

                                 :

RAR ENTREPRENEURIAL FUND, LTD.,    :

                                 :

                  Defendant.  :

                                 :
---------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Attached to this Order are the following:

- Court Exhibit 1: the juror questionnaire that was used in voir dire on March 3, 2022;

- Court Exhibit 2: the draft jury charge that was considered at the charge conference held on the
  record on March 4, 2022.

        SO ORDERED.

Dated: March 4, 2022
      New York, New York

                                JESSE M. FURMAN
                            United States District Judge

**COURT EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                                                  :
IRVING H. PICARD, *Trustee for the Liquidation of*                :
*Bernard L. Madoff Investment Securities LLC, and*                :
*Bernard L. Madoff*,                                              :          20-CV-1029 (JMF)
                                                                  :
                                    Plaintiff,                    :          <u>VOIR DIRE</u>
                                                                  :
                        -v-                                       :
                                                                  :
RAR ENTREPRENEURIAL FUND, LTD.,                                   :
                                                                  :
                                    Defendant.                    :
                                                                  :
------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

## <u>PLEASE DO NOT READ FURTHER OR WRITE ANYTHING ON</u>

## <u>THIS QUESTIONNAIRE UNTIL THE JUDGE TELLS YOU TO DO SO</u>

When directed to do so, please indicate if your answer to any of the following questions is "**yes**" by circling the number of that question.  If your answer to a question is "**no**," you should not do anything.  Do *not* write your name or make *any other* marks on the questionnaire; the only marks you should make are circles around the questions for which the answer is "yes."  If, when asked about a "yes" answer, you prefer not to elaborate in open court, please say so.

A.     <u>General Questions</u>

1.      As I noted, this trial is expected to last no longer than four days.  Do you have any commitments that would interfere with your serving as a juror at a trial that is expected to end no later than the middle of next week?

2.      Do you have any difficulty understanding or reading English?

3.      Do you have any ideas or prejudices that would make it difficult for you to follow my instructions as to the law?

4.      Do you have any doubt that you will be able to apply the law as I explain it even if you disagree with it?

5.      Do you have any religious or ethical beliefs that would prevent you from passing judgment on another person or an entity?

6.      Have you ever studied or practiced law or worked in any capacity for a law office?

B.     <u>Case-Specific Questions</u>

7.      Do you have any personal knowledge of the claims in this case, between Mr. Picard and RAR, as I have described them?

8.      Have you read or heard anything about *this* case — not the Madoff scheme generally — through the media, the internet, or through any other source?

9.      Were you or was anyone close to you personally affected by the collapse of Bernard Madoff's scheme?

10.     Did you have, or do you know anyone who had, money invested with Bernard Madoff?

11. Did you or anyone close to you work for Bernard Madoff?

12. If you are familiar with Bernard Madoff's Ponzi scheme generally, would what you know affect your ability to be fair and impartial in this case?

13. Have you or has anyone close to you ever declared bankruptcy or been involved in a bankruptcy proceeding?

14. Have you or has anyone close to you ever been the victim of a financial crime?

15. Have you or has anyone close to you ever been accused of a financial crime?

16. Do you have a background in securities, trading, banking, accounting, or auditing?

17. Have you or has anyone close to you ever worked for the Securities Exchange Commission (SEC), the Internal Revenue Service (IRS), or any other governmental or regulatory entity?

18. Do you have any reason to think that you could not sit fairly and impartially as a juror in this case?

B. <u>Knowledge of Parties, Lawyers, and Witnesses</u>

19. The plaintiff in this case is Mr. Irving Picard, and he is represented by David Sheehan, Nicholas Cremona, Brian Song, Seanna Brown, Lan Hoang, Amy Vanderwal, Stephanie Ackerman, Tara Turner, and Bari Nadworny of the law firm Baker & Hostetler LLP.  Do you know, or have you had any personal or business dealings with, the plaintiff, the plaintiff's counsel, or his counsel's law firm?

20. The defendant is RAR Entrepreneurial Fund, Ltd., and it is represented by Helen Davis Chaitman and Lance Gotthoffer of the law firm Chaitman LLP.  Do you know, or have you had any personal or business dealings with, the defendant, the defendant's counsel, or his counsel's law firm?

21. Have you had any personal or business dealings with the Securities Investor Protection Corporation ("SIPC")?

22.    To your knowledge, do you have any relatives, friends, associates, or employers who have had any dealings with, or been employed by, SIPC, any of the parties, or any of their attorneys?

23.    Do you have any knowledge, opinions, feelings, or impressions about the plaintiff (Irving Picard), the defendant (RAR Entrepreneurial Fund), or the SIPC that would affect your ability to be a fair and impartial juror in this case?

24.    Do you know or have you heard of any of the following people who may testify or whose names may be mentioned during the course of the trial?

| | | | |
|---|---|---|---|
| A. | Zager Barutcuoglu | P. | Irwin Lipkin |
| B. | Peter Berkowitz | Q. | Andrew Madoff |
| C. | Annette Bongiorno | R. | Mark Madoff |
| D. | Daniel Bonventre | S. | Peter Madoff |
| E. | Lisa Collura | T. | Steve Maslow |
| F. | Linda Corabella | U. | Neilay Mehta |
| G. | Enrica Cotellessa-Pitz | V. | Alan Nisselson |
| H. | Frank DiPascali | W. | Russell Oasis |
| I. | Bruce Dubinsky | X. | Jamie Rosenberger |
| J. | Rebeca Fong | Y. | Heath Sroka |
| K. | Steven Friedman | Z. | Anthony (Tony) Tiletnick |
| L. | Matthew Greenblatt | AA. | Peter Tiletnik |
| M. | David Kugel | BB. | Walter Tiletnick |
| N. | Jonathan Lenaghan | CC. | Hendrik Voigt |
| O. | Eric Lipkin | DD. | Ned Zachar |

25.    Are you familiar with anyone else present in the courtroom, including your fellow jurors, all Court personnel, and myself?

C.    <u>Experience with, and Opinions of, Lawsuits</u>

26.    Have you, or has any member of your immediate family, ever brought a lawsuit against anyone?

27.    Have you, or has any member of your immediate family, ever been sued?

28.    Do you believe that simply because someone brings a lawsuit that must mean the person deserves to get money?

29.    Have you, or has any member of your immediate family, ever appeared as a witness either at a trial or in a grand jury investigation?

D.    Difficulties in Understanding or Serving

30.    Do you have a problem with your hearing or vision that would prevent you from giving full attention to all of the evidence at this trial?

31.    Do you have any medical problems that might interfere with your service as a juror in this case (including any inability to sit for long periods of time)?

32.    In these questions, I have tried to direct your attention to possible reasons why you might not be able to sit as a fair and impartial juror.  Apart from any prior question I have asked you, is there *any* reason that you could *not* be a conscientious, fair, and impartial juror in this case, and render a true and just verdict without fear, favor, sympathy, or prejudice, according to the law as I will explain it to you?

## QUESTIONS FOR INDIVIDUAL JURORS

1.    Please state your name and county of residence.  (Please list each county in which you have lived during the past five years.)

2.    How old are you?

3.    How far did you go in school?

4.    What do you do for a living?  (If retired or unemployed, describe your last employment.)

5.    How long have you been employed in your current position?  (If fewer than five years, where else did you work in the last five years?)

6.    Do you live with anyone and, if so, what do they do?  (If retired or unemployed, describe their last employment.)

7.    Do you have grown children?  What do they do?

8.    How do you get your news (newspapers, magazines, radio, television, social media, etc.)?

9.    Do you belong to or volunteer your time to any associations, organizations, clubs, or unions?

10.     What do you like to do in your spare time?

11.     Have you ever served as a juror?  If so, when did you serve and was it a civil or criminal case?

Were you the foreperson?  Did you reach a verdict?  (**Do not tell us what the verdict was**.)

**COURT EXHIBIT 2**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                                             :

IRVING H. PICARD, *Trustee for the Liquidation of*    :
*Bernard L. Madoff Investment Securities LLC, and*    :
*Bernard L. Madoff*,    :
                                             :

                     Plaintiff,    :
                                             :         20-CV-1029 (JMF)
         -v-                          :
                                             :

RAR ENTREPRENEURIAL FUND, LTD.,    :
                                             :

                     Defendant.    :
                                             :
------------------------------------------------------------------X

# JURY CHARGE

March 4, 2022

# Table of Contents

I. GENERAL INTRODUCTORY CHARGES ............................................................................ 1

    Role of the Court and the Jury .................................................................................................2

    The Parties ..............................................................................................................................2

    Conduct of Counsel ................................................................................................................2

    Direct and Circumstantial Evidence .......................................................................................3

    What Is and What Is Not Evidence .........................................................................................4

    Credibility of Witnesses .........................................................................................................6

    Expert Witnesses ...................................................................................................................7

    All Available Evidence Need Not Be Produced ........................................................................8

    Preponderance of the Evidence ..............................................................................................9

II. SUBSTANTIVE ISSUES ............................................................................................................ 9

    Bernard L. Madoff's Ponzi Scheme .......................................................................................9

    "Interest of the Debtor" ........................................................................................................11

III. CONCLUDING INSTRUCTIONS ........................................................................................ 13

    COVID-19 Protocols ...........................................................................................................13

    Selection of Foreperson ........................................................................................................14

    Right To See Exhibits and Hear Testimony ..........................................................................14

    Juror Note-Taking ...............................................................................................................15

    Duty To Deliberate .............................................................................................................15

    Return of the Verdict ...........................................................................................................16

    Closing Comments ..............................................................................................................17

1              # I. GENERAL INTRODUCTORY CHARGES

2              Members of the jury, you have now heard all of the evidence in the case.  It is my duty at

3       this point to instruct you as to the law.  My instructions to you will be in three parts.

4              First, I will give you general instructions about, for example, your role as the jury, what

5       you can and cannot consider in your deliberations, and the burden of proof.

6              Second, I will describe the law to be applied to the facts as you find them to be

7       established by the evidence.

8              Finally, I will give you some instructions with respect to your deliberations.

9              I am going to read my instructions to you.  It is not my favorite way to communicate —

10      and not the most scintillating thing to listen to — but there is a need for precision, and it is

11      important that I get the words just right, and so that is why I will be reading.

12             Because my instructions cover many points, I have given you a copy of my instructions

13      to follow along.  Please limit yourself to following along; that is, do *not* read ahead in the

14      instructions.  If you find it easier to listen and understand while you are following along with me,

15      please do so.  If you would prefer, you can just listen and not follow along.  Either way, you may

16      take your copy of the instructions with you into the jury room so you can consult it if you want to

17      re-read any portion of the charge to facilitate your deliberations.

18             For now, listen carefully and try to concentrate on the substance of what I'm saying.

19      Also, you should not single out any instruction as alone stating the law; rather, you should

20      consider my instructions as a whole when you retire to deliberate in the jury room.

21

22

1  <u>Role of the Court and the Jury</u>

2      You, the members of the jury, are the sole and exclusive judges of the facts.  You must

3  weigh and consider the evidence without regard to sympathy, prejudice, or passion for or against

4  any party.  It is your duty to accept my instructions as to the law and to apply them to the facts as

5  you determine them.  If either party has stated a legal principle different from any that I state to

6  you in my instructions, it is my instructions that you must follow.

7  **Adapted from *Ortiz v. City of New York*, 11 Civ. 7919 (JMF).**

8

9  <u>The Parties</u>

10      As you know, the parties in this case are Irving H. Picard, in his capacity as Trustee for

11  the Liquidation of Bernard L. Madoff Investment Securities LLC, and RAR Entrepreneurial

12  Fund, Ltd.  The fact that Mr. Picard brings this case in his capacity as a Trustee and the fact that

13  the Defendant is a company does not mean that either party is entitled to any greater or lesser

14  consideration by you.  All litigants are equal before the law, and representative parties and

15  companies, big or small, are entitled to the same fair consideration as you would give any other

16  individual party.

17  **Adapted from *Skyline Steel LLC v. PilePro LLC*, 13 Civ. 8171 (JMF).**

18

19  <u>Conduct of Counsel</u>

20      The personalities and the conduct of counsel are not in any way at issue.  If you formed

21  opinions of any kind about any of the lawyers in the case, favorable or unfavorable, whether you

22  approved or disapproved of their behavior, those opinions should not enter into your

23  deliberations.

1    In addition, remember that it is the duty of a lawyer to object when the other side offers

2    testimony or other evidence that the lawyer believes is not properly admissible.  Therefore, you

3    should draw no inference from the fact that there was an objection to any evidence.  Nor should

4    you draw any inference from the fact that I sustained or overruled an objection.  Simply because

5    I have permitted certain evidence to be introduced does not mean that I have decided on its

6    importance or significance.  That is for you to decide.

7    **Adapted from _United States v. Ansah_, 19 Cr. 752 (JMF).**

8

9    Direct and Circumstantial Evidence

10    There are two types of evidence that you may properly use in reaching your verdict.  One

11    type of evidence is direct evidence.  Direct evidence of a fact in issue is presented when a

12    witness testifies to that fact based on what he or she personally saw, heard, or otherwise observed

13    through the five senses.  The second type of evidence is circumstantial evidence.  Circumstantial

14    evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

15    There is a simple example of circumstantial evidence that is often used in this courthouse.

16    Assume that when you came into the courthouse this morning the sun was shining and it was a

17    nice day outside.  Also assume that the courtroom shades were drawn and you could not look

18    outside.  Assume further that as you were sitting here, someone walked in with an umbrella that

19    was dripping wet, and then, a few moments later, somebody else walked in with a raincoat that

20    was also dripping wet.

21    Now, because you could not look outside the courtroom and you could not see whether or

22    not it was raining, you would have no direct evidence of that fact.  But on the combination of the

23    facts that I have asked you to assume, it would be reasonable and logical for you to conclude that

24    it was raining.

3

1    That is all there is to circumstantial evidence.  You infer on the basis of reason,

2  experience, and common sense from an established fact the existence or the nonexistence of

3  some other fact.  The matter of drawing inferences from facts in evidence is not a matter of

4  guesswork or speculation.  An inference is a logical, factual conclusion that you might

5  reasonably draw from other facts that have been proved.

6  **Adapted from _United States v. Ansah_, 19 Cr. 752 (JMF); _Bakalor v. J.B. Hunt Transport,_**

7  **_Inc._, 11 Civ. 2911 (JMF).**

8

9  <u>What Is and What Is Not Evidence</u>

10    What, then, is the evidence in the case?

11    The evidence in this case is (1) the sworn testimony of the witnesses, (2) the exhibits

12  received into evidence, and (3) any stipulations made by the parties.

13    A stipulation is an agreement between parties as to what certain facts were or what the

14  testimony would be if certain people testified before you.  The stipulations are the same for your

15  purposes as the presentation of live testimony.  You should consider the weight to be given such

16  evidence just as you would any other evidence.

17    Anything other than the sworn testimony of the witnesses, the exhibits received into

18  evidence, and any stipulations made by the parties is not evidence.  For example, the questions

19  posed to a witness are not evidence: It is the witnesses' answers that are evidence, not the

20  questions.  In addition, exhibits marked for identification but not admitted by me are not

21  evidence, nor are materials brought forth only to refresh a witness's recollection.  Moreover,

22  testimony that has been stricken or excluded by me is not evidence and may not be considered by

23  you in rendering your verdict.

4

1    Along these lines, you will recall that, among the exhibits received in evidence, some

2    documents are redacted.  "Redacted" means that part of the document was taken or blacked out.

3    You are to concern yourself only with the part of the document that has been admitted into

4    evidence.  You should not consider any possible reason why the other part of it has been deleted

5    or blacked out.

6    Arguments by the advocates are also not evidence.  What you heard during the opening

7    statements and summations is merely intended to help you understand the evidence and reach

8    your verdict.  If your recollection of the facts differs from the lawyers' statements, you should

9    rely on your recollection.  If a lawyer made a statement during his or her opening or summation

10   and you find that there is no evidence to support the statement, you should disregard the

11   statement.

12   Finally, any statements that I may have made during the trial or during these instructions

13   do not constitute evidence.  At times, I may have admonished a witness or directed a witness to

14   be responsive to questions or to keep his or her voice up.  At times, I may have asked a question

15   myself.  Any questions that I asked, or instructions that I gave, were intended only to clarify the

16   presentation of evidence and to bring out something that I thought might be unclear.  You should

17   draw no inference or conclusion of any kind, favorable or unfavorable, with respect to any

18   witness or any party in the case, by reason of any comment, question, or instruction of mine.

19   The rulings I have made during the trial and these instructions are no indication of my views of

20   what your decision should be.  Nor should you infer that I have any views as to the credibility of

21   any witness, as to the weight of the evidence, or as to how you should decide any issue that is

22   before you.  That is entirely your role.

23   **Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF).**

1

2    <u>Credibility of Witnesses</u>

3        How do you evaluate the credibility or believability of the witnesses?  The answer is that

4    you use your common sense.  There is no magic formula by which you can evaluate testimony.

5    You may use the same tests here that you use in your everyday life when evaluating statements

6    made by others to you.  You may ask yourselves: Did the witness impress you as honest, open,

7    and candid?  How responsive was the witness to the questions asked on direct examination and

8    on cross-examination?

9        If you find that a witness is intentionally telling a falsehood, that is always a matter of

10   importance you should weigh carefully.  On the other hand, a witness may be inaccurate,

11   contradictory, or even untruthful in some respects and entirely believable and truthful in other

12   respects.  It is for you to determine whether such inconsistencies are significant or

13   inconsequential, and whether to accept or reject all the testimony of any witness, or to accept or

14   reject only portions.

15       You are not required to accept testimony even though the testimony is uncontradicted and

16   the witness's testimony is not challenged.  You may reject it because of the witness's bearing or

17   demeanor, or because of the inherent improbability of the testimony, or for other reasons

18   sufficient for you to conclude that the testimony is not worthy of belief.

19       In evaluating the credibility of the witnesses, you should take into account any evidence

20   that a witness may benefit in some way from the outcome of the case.  Such interest in the

21   outcome creates a motive to testify falsely and may sway a witness to testify in a way that

22   advances his or her own interests.  Therefore, if you find that any witness whose testimony you

23   are considering may have an interest in the outcome of this trial, you should bear that factor in

1  mind when evaluating the credibility of his or her testimony, and decide whether to accept it with

2  great care.

3        Keep in mind, though, that it does not automatically follow that testimony given by an

4  interested witness is to be disbelieved.  There are many people who, no matter what their interest

5  in the outcome of the case may be, would not testify falsely.  It is for you to decide, based on

6  your own perceptions and common sense, to what extent, if at all, the witness's interest has

7  affected his or her testimony.

8  **Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF); *Ortiz v. City of New York*, 11 Civ.**

9  **7919 (JMF); *Bakalor v. J.B. Hunt Transport, Inc.*, 11 Civ. 2911 (JMF).**

10

11  Expert Witnesses

12        You have heard expert testimony in this case.  When a case involves a matter requiring

13  special knowledge or skill not ordinarily possessed by the average person, an expert is permitted

14  to state his or her opinion for the information of the Court and jury.  Such testimony is presented

15  to you on the theory that someone who is experienced and knowledgeable in the field can assist

16  you in understanding the evidence or in reaching an independent decision on the facts.

17        The opinion stated by the expert who testified before you was based on particular facts as

18  the expert himself observed them and testified to them before you, or as he was told by

19  somebody else or as appeared to him from some record.  You may reject an expert's opinion if

20  you find, from the evidence in this case, that the underlying facts are different from those that

21  formed the basis of the opinion.  You may also reject the expert's opinion if, after careful

22  consideration of all the evidence in the case, including expert and other testimony, you disagree

23  with that opinion.  In other words, you are not required to accept the expert's opinion to the

24  exclusion of the facts and circumstances disclosed by other evidence.  Such an opinion is subject

7

1  to the same rules concerning reliability as the testimony of any other witness, and it is allowed

2  only to aid you in reaching a proper conclusion.

3        In weighing the expert's testimony, you may consider the expert's qualifications,

4  opinions, reasons for testifying, as well as all of the other considerations that ordinarily apply

5  when you are deciding whether or not to believe a witness's testimony.  You may give the expert

6  testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.

7  You should not, however, accept a witness's testimony merely because he is an expert.  Nor

8  should you substitute an expert's opinion for your own reason, judgment, and common sense.

9  The determination of the facts in this case rests solely with you.

10  **Adapted from _Skyline Steel L.L.C. v. PilePro L.L.C._, 13 Civ. 8171 (JMF).**

11

12  <u>All Available Evidence Need Not Be Produced</u>

13        The law does not require any party to call as witnesses all persons who may have been

14  present at any time or place involved in the case, or who may appear to have some knowledge of

15  the matters in issue at this trial.  Nor does the law require any party to produce as exhibits all

16  papers and things mentioned in the evidence in the case.

17        You are not to rest your decision on what some absent witness who was not brought in

18  might have testified to, or what he or she might not have testified to.  Each party had an equal

19  opportunity, or lack of opportunity, to call any of these witnesses.  Therefore, you should not

20  draw any inferences or reach any conclusions as to what an absent witness would have testified

21  to had they been called.  Their absence should not affect your judgment in any way.

22  **Adapted from _United States v. Ansah_, 19 Cr. 752 (JMF); _Ortiz v. City of New York_, 11 Civ.**

23  **7919 (JMF); _Bakalor v. J.B. Hunt Transport, Inc._, 11 Civ. 2911 (JMF).**

24

1  Preponderance of the Evidence

2        Before I instruct you on the issues you must decide, I want to define for you the standard

3  under which you will decide whether a party has met its burden of proof on a particular issue.

4  The standard that applies in this case is the preponderance of the evidence.  As I told you at the

5  beginning of the trial, proof beyond a reasonable doubt, which is the proper standard of proof in

6  a criminal trial, does not apply to a civil case such as this and you should put it out of your mind.

7        To establish by a preponderance of evidence means that the evidence of the party having

8  the burden of proof must be more convincing and persuasive to you than that opposed to it.  The

9  difference in persuasiveness need not be great: So long as you find that the scales tip, however

10  slightly, in favor of the party with the burden of proof — that what the party claims is more

11  likely than not true — then that element will have been proved by a preponderance of evidence.

12  And here it is important for you to realize that this refers to the quality of the evidence and not to

13  the number of witnesses, the number or variety of the exhibits, or the length of time spent on a

14  subject.  In determining whether any fact has been proved by a preponderance of evidence, you

15  may consider the testimony of all of the witnesses and all of the exhibits.

16  **Adapted from *Ortiz v. City of New York*, 11 Civ. 7919 (JMF); *Bakalor v. J.B. Hunt**

17  **Transport, Inc.*, 11 Civ. 2911 (JMF); *In re Direct Access Partners, LLC*, 602 B.R. 495, 540**

18  **(Bankr. S.D.N.Y. 2019) (applying a preponderance standard to a claim pursuant to 11**

19  **U.S.C. § 548(a)(1)(A)).**

20

21                              II. SUBSTANTIVE ISSUES

22  Bernard L. Madoff's Ponzi Scheme

23        That completes your general instructions.  Let me turn, then, to the law that applies to the

9

1    issues in this case.  As you are aware, this case arises from and relates to the Ponzi scheme

2    conducted by Bernard L. Madoff.  From 1960 until 2001, Mr. Madoff operated a securities

3    broker-dealer business as a sole proprietorship (the "Sole Proprietorship"), frequently using the

4    trade name "Bernard L. Madoff Investment Securities."  A sole proprietorship is a business in

5    which one person owns all the assets, owes all the liabilities, and operates in his personal

6    capacity.

7            The Sole Proprietorship was comprised of three business units: (1) a proprietary trading

8    business, (2) a market-making business, and (3) an investment advisory business.  The

9    proprietary trading business traded for its own account to make money for the Sole

10   Proprietorship.  The market-making business made markets in certain securities including stocks,

11   bonds, warrants, and rights.  The investment advisory business claimed to have bought and sold

12   securities on behalf of its customer accounts.  Mr. Madoff ran a Ponzi scheme through the

13   investment advisory business.  Mr. Madoff solicited funds from investors and purported to invest

14   those funds.  As is now well known, however, Mr. Madoff did not invest those funds.

15           In 2001, Mr. Madoff formed a limited liability company, Bernard L. Madoff Investment

16   Securities LLC (the "Limited Liability Company" or "LLC"), with himself as the sole member.

17   A limited liability company or LLC is an unincorporated business organization of one or more

18   persons who have limited liability for the contractual obligations and other liabilities of the

19   business.  The owners of an LLC are "members" rather than shareholders or partners, but an

20   LLC is a separate legal entity from its members.  Organizers form an LLC by filing Articles of

21   Organization with the Department of State.  Any person or business entity may be an organizer.

22           Mr. Madoff's Ponzi scheme finally collapsed on December 10, 2008, when the inflow of

23   new investments could no longer support the payments required to meet customers' redemption

1   requests.  Mr. Madoff was arrested and his LLC was placed into bankruptcy under a statute that

2   deals with failed securities broker-dealers called the Securities Investor Protection Act or

3   "SIPA."  Irving H. Picard, the Plaintiff in this case, was appointed as the SIPA Trustee for Mr.

4   Madoff's LLC.  Under SIPA, Mr. Picard is authorized to recover certain money paid out by the

5   LLC.  Any money recovered will be used to pay customers who lost their principal investments.

6   **Adapted from _Picard v. RAR Entrepreneurial Fund, Ltd._, No. 20-CV-1029 (JMF), 2021 WL**

7   **827195, at \*1–2 (S.D.N.Y. Mar. 3, 2021); _Picard v. Gettinger (In re Bernard L. Madoff Inv._**

8   **_Sec. LLC)_, 976 F.3d 184, 188 (2d Cir. 2020), _cert. denied sub nom. Gettinger v. Picard_, No.**

9   **20-1382, 2021 WL 1725218 (U.S. May 3, 2021); _In re Bernard L. Madoff Inv. Sec. LLC_, 654**

10  **F.3d 229, 231-33 (2d Cir. 2011); "Sole Proprietorship," Black's Law Dictionary (11th ed.**

11  **2019); N.Y. Ltd. Liab. Co. Law §§ 101–1403 (McKinney 2021); _Battino v. Cornelia Fifth_**

12  **_Ave., LLC_, 861 F. Supp. 2d 392, 408 (S.D.N.Y. 2012).**

13

14  <u>"Interest of the Debtor"</u>

15       As Trustee, Mr. Picard may bring what are known as "avoidance actions" to recover

16  transfers of funds made by the LLC prior to its collapse.  Specifically, under section

17  548(a)(1)(A) of the United States Bankruptcy Code, the Trustee can "avoid," or in other words

18  take back, transfers that the LLC made to RAR during the two-year period prior to entering

19  bankruptcy with the intent to hinder, delay, or defraud its creditors.  This lawsuit was brought by

20  Mr. Picard to avoid and recover funds transferred to RAR.  The Trustee distributes the funds he

21  recovers in avoidance actions to other customers who lost their principal investments.

22       Under the Bankruptcy Code, Mr. Picard is entitled to recover the money transferred to

23  RAR if the money was: (1) an interest of the debtor in property; (2) made within two years of the

24  date the debtor filed for bankruptcy (here, December 11, 2008); and (3) made with actual intent

1   to hinder, delay, or defraud a creditor.  Mr. Picard need not prove that RAR knew or should have

2   known that the money was derived from, or related to, a criminal scheme.

3         I have already determined as a matter of law that the Trustee has proved the second and

4   third elements based on transfers that were made from the 509 and 703 Accounts at JP Morgan

5   Chase to RAR between December 11, 2006, and December 11, 2008.  Thus, the only element for

6   you to consider in this case is the first, whether there was a transfer of an interest of the debtor —

7   namely, the LLC.  In deciding whether the Trustee has met his burden as to that element, you

8   should not consider one way or another the fact that I have already decided the other elements.

9         As you have heard, the transfers that RAR received came from JPMorgan Chase Bank,

10   N.A. bank accounts #xxxxx703 (the "703 Account") and #xxxxxxxxx509 (the "509 Account").

11   The parties disagree about who owned those bank accounts.  Mr. Picard argues that the accounts

12   were owned by the LLC, or "debtor."  If you find that to be the case, then Mr. Picard is entitled

13   to recover the money transferred to RAR because the money was "a transfer of an interest of the

14   debtor."  RAR argues that the accounts were owned by the Sole Proprietorship or by Mr. Madoff

15   himself and that the investment advisory business and the accounts at issue were never

16   transferred to the LLC.  If you find that to be the case, then Mr. Picard cannot recover the money

17   transferred to RAR because there was no "transfer of an interest of the debtor" — the "debtor"

18   being the LLC, not the Sole Proprietorship or Mr. Madoff himself.  Mr. Picard bears the burden

19   of proof on this issue, and as I mentioned earlier, Mr. Picard must meet that burden by a

20   preponderance of the evidence.

21         As you will see, the Verdict Form that we will ask you to complete includes two

22   questions.  The first question asks whether you find that the investment advisory business of

23   Bernard L. Madoff's Sole Proprietorship was transferred to the LLC at some point prior to

1   December 11, 2006, which is two years prior to the date on which the LLC filed for bankruptcy.

2   If you find that the answer to that question is "yes," you should skip the second question.  If you

3   find that the answer to the first question is "no," you should answer the second question, which

4   asks whether you find that, when the money at issue was transferred to RAR from the 703

5   Account and the 509 Account between December 11, 2006, and December 11, 2008, those

6   accounts were owned by the LLC (rather than by the Sole Proprietorship or Bernard L. Madoff

7   in his individual capacity).  I will give you additional instructions with respect to the Verdict

8   Form shortly.

9   **Adapted from 11 U.S.C. § 548(a)(1)(A); *Picard v. RAR Entrepreneurial Fund, Ltd.*, No. 20-**

10   **CV-1029 (JMF), 2021 WL 827195, at \*5, \*12 (S.D.N.Y. Mar. 3, 2021); *Adelphia Recovery***

11   ***Tr. v. Bank of Am., N.A.*, Nos. 05 Civ. 9050 (LMM) & 03 MDL 1529, 2011 WL 1419617, at**

12   **\*2 (S.D.N.Y. Apr. 7, 2011), *aff'd sub nom. Adelphia Recovery Tr. v. Goldman, Sachs & Co.*,**

13   **748 F.3d 110 (2d Cir. 2014); *In re Direct Access Partners, LLC*, 602 B.R. 495, 540 (Bankr.**

14   **S.D.N.Y. 2019) (applying a preponderance standard to a claim pursuant to 11 U.S.C. §**

15   **548(a)(1)(A)).**

16

17

18                              III. CONCLUDING INSTRUCTIONS

19   COVID-19 Protocols

20          In a few minutes, you are going to go into the jury room and begin your deliberations.

21   During your deliberations, please continue to adhere to the safety protocols that we have used

22   throughout the trial, including social distancing and masking.  We have taken those precautions,

23   on the advice of our medical experts, to ensure that everyone remains safe and healthy during

1   trials.  In addition, people have different levels of anxiety and risk tolerance when it comes to

2   COVID-19.  By adhering to the protocols, you not only ensure that everyone remains safe and

3   healthy, but also respect the fact that your fellow jurors may or may not have the same level of

4   comfort with the current situation that you have.

5   **Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF).**

6

7   Selection of Foreperson

8          After you retire to begin your deliberations, your first task will be to select a foreperson.

9   The foreperson has no greater voice or authority than any other juror, but is the person who will

10   communicate with me when questions arise and when you have reached a verdict and who will

11   be asked in open court to pass your completed Verdict Form to me.  Notes should be signed by

12   the foreperson and should include the date and time they were sent.  They should also be as clear

13   and precise as possible.  Any notes from the jury will become part of the record in this case.  So

14   please be as clear and specific as you can be in any notes that you send.  Do not tell me or

15   anyone else how the jury stands on any issue until after a unanimous verdict is reached.

16   **Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF).**

17

18   Right To See Exhibits and Hear Testimony

19          All of the exhibits will be given to you near the start of deliberations.  Most of it will be

20   provided to you in an electronic format.  When you retire to deliberate, my staff will provide you

21   with instructions on how to access and display evidence in the jury room.

22          If you prefer to view any evidence here in the courtroom or if you want any of the

23   testimony read back to you, you may also request that.  Keep in mind that if you ask for

24   testimony, however, the court reporter must search through his or her notes, the parties must

1     agree on what portions of testimony may be called for, and if they disagree I must resolve those

2     disagreements.  That can be a time-consuming process.  So please try to be as specific as you

3     possibly can in requesting portions of the testimony, if you do.

4          Again, your requests for testimony — in fact, any communication with the Court —

5     should be made to me in writing, signed by your foreperson with the date and time, and given to

6     one of the Court Security Officers.

7     **<u>Adapted from <i>United States v. Ansah</i>, 19 Cr. 752 (JMF).</u>**

8

9     <u>Juror Note-Taking</u>

10         If any one of you took notes during the course of the trial, you should not show your

11    notes to, or discuss your notes with, any other jurors during your deliberations.  Any notes you

12    have taken are to be used solely to assist you.  The fact that a particular juror has taken notes

13    entitles that juror's views to no greater weight than those of any other juror.  Finally, your notes

14    are not to substitute for your recollection of the evidence in the case.  If, during your

15    deliberations, you have any doubt as to any of the testimony, you may — as I just told you —

16    request that the official trial transcript that has been made of these proceedings be read back to

17    you.

18    **<u>Adapted from <i>United States v. Ansah</i>, 19 Cr. 752 (JMF).</u>**

19

20    <u>Duty To Deliberate</u>

21         The most important part of this case, members of the jury, is the part that you as jurors

22    are now about to play as you deliberate on the issues of fact.  I know you will try the issues that

23    have been presented to you according to the oath that you have taken as jurors.  In that oath you

24    promised that you would well and truly try the issues joined in this case and a true verdict render.

1    As you deliberate, please listen to the opinions of your fellow jurors, and ask for an

2  opportunity to express your own views.  Every juror should be heard.  No one juror should hold

3  the center stage in the jury room and no one juror should control or monopolize the deliberations.

4  If, after listening to your fellow jurors and if, after stating your own view, you become convinced

5  that your view is wrong, do not hesitate because of stubbornness or pride to change your view.

6  On the other hand, do not surrender your honest convictions and beliefs solely because of the

7  opinions of your fellow jurors or because you are outnumbered.

8    Your verdict must be unanimous.  If at any time you are not in such agreement, you are

9  instructed that you are not to reveal the standing of the jurors, that is, the split of the vote, to

10  anyone, including me, at any time during your deliberations.

11  **Adapted from _United States v. Ansah_, 19 Cr. 752 (JMF).**

12

13  Return of the Verdict

14    We have prepared a Verdict Form for you to use in recording your decisions, a copy of

15  which is attached to these instructions.  Do not write on your individual copies of the Verdict

16  Form.  My staff will give the official Verdict Form to Juror Number One, who should give it to

17  the foreperson after the foreperson has been selected.

18    You should draw no inference from the questions on the Verdict Form as to what your

19  verdict should be.  The questions are not to be taken as any indication that I have any opinion as

20  to how they should be answered.

21    After you have reached a verdict, the foreperson should fill in the Verdict Form and note

22  the date and time, and you should all sign the Verdict Form.  The foreperson should then give a

23  note — **not** the Verdict Form itself — to the Court Security Officer outside your door stating that

16

1    you have reached a verdict.  Do not specify what the verdict is in your note.  Instead, the

2    foreperson should retain the Verdict Form and hand it to me in open court when I ask for it.

3            I will stress again that all of you must be in agreement with the verdict that is announced

4    in court.  Once your verdict is announced by the foreperson in open court and officially recorded,

5    it cannot ordinarily be revoked.

6    **Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF).**

7

8    Closing Comments

9            Finally, I say this, not because I think it is necessary, but because it is the custom in this

10   courthouse to say it:  You should treat each other with courtesy and respect during your

11   deliberations.

12           All litigants stand equal in this room.  All litigants stand equal before the bar of justice.

13   All litigants stand equal before you.  Your duty is to decide between these parties fairly and

14   impartially, and to see that justice is done.

15           Under your oath as jurors, you are not to be swayed by sympathy.  You should be guided

16   solely by the evidence presented during the trial and the law as I gave it to you, without regard to

17   the consequences of your decision.  You have been chosen to try the issues of fact and reach a

18   verdict on the basis of the evidence or lack of evidence.  If you let sympathy interfere with your

19   clear thinking, there is a risk that you will not arrive at a just verdict.  All parties to a civil

20   lawsuit are entitled to a fair trial.  You must make a fair and impartial decision so that you will

21   arrive at the just verdict.

22           Members of the jury, I ask your patience for a few moments longer.  It is necessary for

23   me to spend a few moments with the lawyers and the court reporter at the side bar.  I will ask you

1    to remain patiently in the jury box, without speaking to each other, and we will return in just a

2    moment to submit the case to you.  Thank you.

3    **<u>Adapted from *United States v. Ansah*, 19 Cr. 752 (JMF).</u>**

1  UNITED STATES DISTRICT COURT
2  SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
                                                                    :
IRVING H. PICARD, *Trustee for the Liquidation of*                  :
*Bernard L. Madoff Investment Securities LLC, and*                  :
*Bernard L. Madoff*,                                                :          20-CV-1029 (JMF)
                                                                    :
                              Plaintiff,                            :
                                                                    :          VERDICT FORM
                 -v-                                                :
                                                                    :
RAR ENTREPRENEURIAL FUND, LTD.,                                     :
                                                                    :
                              Defendant.                            :
                                                                    :
--------------------------------------------------------------------X

3
4                        **PLEASE CIRCLE YOUR ANSWER(S)**
5
6                      *Your Answer(s) Must Be Unanimous*
7
8
9    1.   Do you find that the investment advisory business of Bernard L. Madoff's Sole
10        Proprietorship was transferred to the LLC at some point prior to December 11, 2006 (two
11        years prior to the date on which the LLC filed for bankruptcy)?
12
13              YES              NO
14
15        [*If you answer YES to Question 1, then you should skip Question 2 and proceed
16        directly to sign the Verdict Form.*]
17
18   2.   Do you find that, when the money at issue was transferred to RAR from JPMorgan Chase
19        Bank, N.A. bank accounts #xxxxx703 (the "703 Account") and #xxxxxxxxx509 (the
20        "509 Account") between December 11, 2006, and December 11, 2008, those accounts
21        were owned by the LLC (rather than by the Sole Proprietorship or Bernard L. Madoff in
22        his individual capacity)?
23
24              YES              NO
25
26
27        *When you have reached a verdict, sign your names on the next page, fill in the date
28        and time, and inform the Court Security Officer — with a note, __not the Verdict Form__*
29        *__itself__ — that you have reached a verdict.*
30

1

1

2      After completing the form, each juror who agrees with this verdict must sign below:

3

4

5      _____          _____

6      Foreperson

7

8

9

10     _____          _____

11

12

13

14

15     _____          _____

16

17

18

19

20     _____          _____

21

22

23

24     Date and time:     _____